IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BILL LIETZKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-cv-01031-WKW-JTA |
| | ) | (WO) |
| CITY OF MONTGOMERY, AL, and | ) | |
| STEVEN L. REED, Mayor, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**
**AND ORDER TO SHOW CAUSE**

Before the court is the Complaint (Doc. No. 1) filed by *pro se* Plaintiff Bill Lietzke,

who is proceeding *in forma pauperis*. (Doc. No. 8.) For the reasons stated below, the

undersigned recommends that Lietzke's claims pursuant to 42 U.S.C. § 1983 be dismissed

with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) as frivolous and malicious and

for failure to state a claim upon which relief can be granted. Further, the undersigned

recommends that the court decline to exercise supplemental jurisdiction over Lietzke's

state law claims. The undersigned also recommends that the court enter other sanctions

similar to sanctions recommended in other cases[1] to ensure that, in the future, Lietzke does

not proceed *in forma pauperis* in this District on vexatiously repetitive complaints.

---

[1] Today, the undersigned is recommending similar measures in the following cases: *Lietzke v.
County of Montgomery*, Case No. 2:21-cv-00209-MHT-JTA; *Lietzke v. Greyhound Lines, Inc.*,

# I.    STANDARD OF REVIEW

When a litigant is allowed to proceed *in forma pauperis* in this court, the court will screen the litigant's complaint in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). Section 1915(e)(2) requires a district court to dismiss the complaint of a party proceeding *in forma pauperis* whenever the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

The standard that governs a dismissal under Federal Rule of Civil Procedure 12(b)(6) also applies to dismissal for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii). *Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008). In applying this standard, the complaint of a *pro se* plaintiff must be liberally construed. *Douglas*, 535 F.3d at 1320. Nevertheless, the factual allegations in the complaint must state a plausible claim for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'"

---

Case No. 2:21-cv-00208-WKW-JTA; *Lietzke v. City of Montgomery*, Case No. 2:21-cv-00207-ECM-JTA; *Lietzke v. City of Birmingham*, Case No. 2:21-cv-00206-ECM-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01033-MHT-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01032-WKW-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01031-WKW-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01030-ECM-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01029-RAH-JTA; and *Lietzke v. County of Montgomery*, Case No. 2:20-cv-01028-ECM-JTA.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (applying *Twombly* to a *pro se* complaint). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 662, 678. *See also Twombly*, 550 U.S. at 555 (holding that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

A claim is subject to dismissal as frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)); *Tucker v. Trump*, No. 1:17-CV-291-MW-GRJ, 2017 WL 8681936, at *1 (N.D. Fla. Dec. 11, 2017), *report and recommendation adopted*, No. 1:17CV291-MW/GRJ, 2018 WL 1542389 (N.D. Fla. Mar. 29, 2018). A frivolous claim is one that "has little or no chance of success" – for example, when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless," *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted), because the plaintiff "seeks to enforce a right which clearly does not exist, or there is an affirmative defense which would defeat the claim, such as the statute

of limitations, *res judicata*, collateral estoppel, or absolute immunity." *Tucker*, 2017 WL

8681936, at *1 (citing *Neitzke*, 490 U.S. at 327 and *Clark v. Ga. Pardons & Paroles Bd.*,

915 F.2d 636, 639 (11th Cir. 1990)).

 Further, in determining whether a complaint is frivolous and malicious, "a litigant's

history of bringing unmeritorious litigation can be considered." *Bilal v. Driver*, 251 F.3d

1346, 1350 (11th Cir. 2001). A complaint may be dismissed as frivolous and malicious

under § 1915(e)(2)(B)(i) when the complaint is meritless abuse of judicial process. *Emrit*

*v. Sec'y, United States Dep't of Educ.*, 829 F. App'x 474, 477 (11th Cir. 2020) (affirming

dismissal of litigation as malicious where the plaintiff was justifiably found to be a

vexatious litigant and the complaint an abuse of process because the plaintiff filed his

complaint simultaneously in multiple districts across the country).

 Before dismissal of the complaint pursuant to § 1915(e), "[a] plaintiff ordinarily

should get one opportunity to amend his complaint before dismissal with prejudice." *Id.* at

477 (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)). However, if

the complaint is frivolous or the amended complaint would otherwise be subject to

dismissal, an opportunity to amend is not required. *Id.*; *see also Nezbeda v. Liberty Mut.*

*Ins. Corp.*, 789 F. App'x 180, 183 (11th Cir. 2019) ("The district court may dismiss a

plaintiff's claims *sua sponte*—without requiring or permitting the plaintiff to amend—if it

concludes that the claims are frivolous." (citing *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th

4

Cir. 2003) (citing in turn § 1915(e)(2)(B)(i)))); *Cornelius v. Bank of Am., NA*, 585 F. App'x

996, 1000 (11th Cir. 2014) ("While a *pro se* litigant generally must be given at least one

opportunity to amend his complaint, a district judge need not allow an amendment where

amendment would be futile." (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir.

2007))).

Liberal construction is afforded to *pro se* pleadings because they are not drafted by

lawyers. *See Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded,

must be held to less stringent standards than formal pleadings drafted by lawyers.'"

(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))); *Hughes v. Lott*, 350 F.3d 1157, 1160

(11th Cir. 2003) ("'*Pro se* pleadings are held to a less stringent standard than pleadings

drafted by attorneys and will, therefore, be liberally construed.'" (quoting *Tannenbaum v.*

*United States*, 148 F.3d 1262, 1263 (11th Cir. 1998))). However, the leniency afforded the

construction of *pro se* pleadings is not license for the court "'to serve as de facto counsel

for a party . . . or to rewrite an otherwise deficient pleading . . . to sustain a cause of action."

*Nails v. AmeriCredit*, No. CIV.A. 2:10CV826, 2011 WL 310254, at *1 (M.D. Ala. Jan. 6,

2011), *report and recommendation adopted*, No. 2:10CV826-MHT, 2011 WL 304790

(M.D. Ala. Jan. 28, 2011) (quoting *GJR Investments, Inc. v. County of Escambia, Fla.*, 132

F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Iqbal*,

556 U.S. 662). "While the pleadings of *pro se* litigants are liberally construed, they must

still comply with procedural rules governing the proper form of pleadings." *Hopkins v. St. Lucie Cty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (internal citations and quotation marks omitted).

## II.   JURISDICTION

This court has subject matter jurisdiction over this action based on federal question jurisdiction, 28 U.S.C. § 1331, as Lietzke appears to allege claims of constitutional violations under 42 U.S.C. § 1983. Lietzke also asserts state law claims over which the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## III.   DISCUSSION

A.   Lietzke's Current Repetitive Litigation

Lietzke has a habit of filing cases here and around the country that arise out of the same acts or omissions and allege the same causes of action. For example, he has frequently filed complaints arising out of what appears to have been some instances of involuntary commitment for psychiatric treatment in August 1999 and again from December 2002 through early 2003.[2] He has frequently filed complaints alleging that on April 20, 2018, he

---

[2] *See, e.g., Lietzke v. County of Montgomery*, Case No. 2:21-cv-00209-MHT-JTA (originally filed in the United States District Court for the Western District of Texas); *Lietzke v. County of Montgomery*, Case No. 2:20-cv-01028-ECM-JTA (same); *Lietzke v. County of Montgomery*, Case No. 2:17-cv-00714-MHT-GMB (originally filed in the United States District Court of Maine); *Lietzke v. County of Montgomery*, Case No. 2:17-cv-00674-MHT-GMB (originally filed in the United States District Court for the Eastern District of Michigan); *Lietzke v. County of Montgomery*, Case No. 2:07-cv-00943-WKW-TFM (originally filed in the United States District Court for the Southern District of New York); *Lietzke v. McKinney*, Case No. 2:07-cv-00383-WKW-TFM; *Lietzke v. Bright*, Case No. 2:07-cv-00324-WHA-WC (originally filed in the United

was assaulted, falsely imprisoned, and unconstitutionally arrested at a Greyhound bus terminal in Birmingham, Alabama.[3] He has frequently filed complaints involving instances in which police officers stopped and questioned him on suspicion of walking in and out of traffic, flagging down cars, walking in traffic lanes, walking in the middle of the street, walking along the interstate, and committing other legal and safety infractions as a

---

States District Court for the District of Maryland); *see also*, *e.g.*, *Lietzke v. County of Montgomery, et al.*, Case No. 3:13-cv-448-B-BK (N.D. Tex.); *Lietzke v. County of Montgomery*, No. 2:13-CV-01023-JCM, 2013 WL 6452318, at *1 (D. Nev. Dec. 9, 2013).

[3] *See*, *e.g.*, *Lietzke v. Greyhound Lines, Inc.*, Case No. 2:21-cv-00208-WKW-JTA (originally filed in the United States District Court for the Western District of Texas); *Lietzke v. City of Birmingham*, Case No. 2:21-cv-00206-ECM-JTA (same); *Lietzke v. City of Birmingham*, Case No. 2:18-cv-00887-WKW-GMB (same); *Lietzke v. Greyhound Lines, Inc.*, Case No. 2:18-cv-00488-MHT-GMB (originally filed in the United States District Court for the Middle District of Alabama); *Lietzke v. City of Birmingham*, Case No. 2:18-cv-00469-MHT-GMB (same); *see also Lietzke v. Greyhound Lines, Inc.*, Case No. 2:20-cv-01968-RDP (N.D. Ala.) (originally filed in the Western District of Texas; dismissed with prejudice "[b]ased on Plaintiff's serial filings in this court and courts around the country" (Doc. No. 8)); *Lietzke v. City of Birmingham, AL, et al.*, Case No. 2:20-cv-01967-MHH (N.D. Ala.) (originally filed in the Western District of Texas; dismissed without prejudice for failure to prosecute); *Lietzke v. City of Birmingham, AL, et al.*, Case No. 2:20-cv-01966-MHH (N.D. Ala.) (originally filed in the Western District of Texas; dismissed as duplicative of another pending lawsuit); *Lietzke v. Greyhound Lines, Inc.*, Case No. 2:20-cv-01965-RKK (N.D. Ala.) (originally filed in the Western District of Texas; dismissed with prejudice as barred by the statute of limitations and for failure to state a claim on grounds that § 1983 does not provide a cause of action against nonstate actors); *Lietzke v. Greyhound Lines, Inc.*, Case No. 2:18-cv-01853-KOB (N.D. Ala.) (originally filed in the Eastern District of California; dismissed with prejudice as duplicative of another pending lawsuit); *Lietzke v. City of Birmingham, et al.*, Case No. 2:18-cv-01729-MHH (N.D. Ala.) (originally filed in the Eastern District of California, then transferred to the Middle District of Alabama, Case No. 2:18-cv-00887, then transferred to the Northern District of Alabama; dismissed without prejudice for failure to prosecute); *Lietzke v. Greyhound Lines, Inc.*, Case No. 2:18-cv-01650-VEH (N.D. Ala.) (originally filed in the Eastern District of California; dismissed without prejudice for failure to prosecute and pursuant to § 1915(e) for lack of jurisdiction and failure to state a claim upon which relief could be granted); *Lietzke v. City of Birmingham*, Case No. 2:18-cv-00796-RDP (N.D. Ala.) (originally filed in the Eastern District of Michigan; dismissed without prejudice for failure to prosecute).

pedestrian. *See*, *e.g.*, *Lietzke v. City of Montgomery*, No. 16CV1296 WPL, 2016 WL 9818319, at *1 (D.N.M. Nov. 29, 2016). Serially filed cases involving Lietzke's brief interactions with police over pedestrian infractions most recently include three cases in which Lietzke asserts claims against police for stopping him on July 6, 2020, to question him regarding complaints that he was flagging down cars, then declining to arrest him and simply ordering him to stay out of the street and not flag down cars.[4] Another case Lietzke has commonly filed is one in which he alleges that, on January 30, 2018, the Montgomery police violated his constitutional rights and libeled and slandered him by stopping him to question him about reports from members of the First Baptist Church of Montgomery that he was following a woman on the church's property.[5] Lietzke has also filed repetitive complaints arising out of other incidents, but those listed here cover those that are currently pending and assigned to the undersigned.

Other complaints Lietzke has filed are practically identical to one another in their legal theories asserting constitutional and state law claims against police for brief

---

[4] *Lietzke v. City of Montgomery*, Case No. 2:21-cv-00207-ECM-JTA (originally filed in the United States District Court for the Western District of Texas); *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01033-MHT-JTA (same); *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01030-ECM-JTA (same).

[5] *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01032-WKW-JTA (originally filed in the Western District of Texas); *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01029-RAH-JTA (same); *Lietzke v. City of Montgomery*, Case No. 2:18-cv-00395-MHT-GMB (originally filed in the Eastern District of Michigan).

interactions with him that fell short of arrest, but they allege that Lietzke was stopped and questioned by police on different occasions. For example, in the instant case, Lietzke alleges that, on September 30, 2020, police stopped him at his front door to ask questions about an alarm system that had been going off and to ask him what he was doing on the premises.

B.      Lietzke's Past History of Repetitive, Frivolous Filings

In the December 9, 2020 Order transferring this case to this District from the Western District of Texas, United States Magistrate Judge Jeffrey C. Manske noted that "Bill Lietzke is perhaps one of the most notorious vexatious litigants ever to appear before this [Western District of Texas] Court" and that, for years, he has frequently filed frivolous lawsuits against the City of Montgomery and its police officers. (Doc. No. 5 at 1 (citing example cases from the Middle District of Alabama, the District of Maine, the District of South Dakota, the District of New Mexico, the District of Nevada, and the District of Idaho).)

In this District, too, Lietzke is infamous for his vexatious, frivolous filings. "Plaintiff Bill Lietzke is well known to this court, having continually filed frivolous lawsuits against the City of Montgomery, Alabama and its police officers for more than a decade." *Lietzke v. City of Montgomery*, No. 2:17-CV-609-MHT-GMB, 2018 WL 4677837, at *1 (M.D. Ala. Aug. 8, 2018), *report and recommendation adopted in part, rejected in part on other grounds*, No. 2:17-CV-609-MHT-GMB, 2018 WL 4030696

(M.D. Ala. Aug. 23, 2018), *judgment entered*, No. 2:17-CV-609-MHT-GMB, 2018 WL

4030697 (M.D. Ala. Aug. 23, 2018). To date, he has filed thirty-eight cases[6] in the Middle

District of Alabama; of those that have ended in a final judgment in this District, nearly all

have been dismissed pursuant to 28 U.S.C. § 1915(e) as frivolous or for failure to state a

claim, though a small number were dismissed for failure to prosecute or comply with court

orders. He usually seeks leave to file his cases *in forma pauperis*. "Lietzke has also filed

many cases in other districts." *Id*.

---

[6] *See Lietzke v. County of Montgomery*, Case No. 2:21-cv-00209-MHT-JTA; *Lietzke v. Greyhound Lines, Inc.*, Case No. 2:21-cv-00208-WKW-JTA; *Lietzke v. City of Montgomery*, Case No. 2:21-cv-00207-ECM-JTA; *Lietzke v. City of Birmingham*, Case No. 2:21-cv-00206-ECM-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01033-MHT-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01032-WKW-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01031-WKW-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01030-ECM-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01029-RAH-JTA; *Lietzke v. County of Montgomery*, Case No. 2:20-cv-01028-ECM-JTA; *Lietzke v. City of Birmingham*, Case No. 2:18-cv-00887-WKW-GMB; *Lietzke v. City of Montgomery*, Case No. 2:18-cv-00858-MHT-GMB; *Lietzke v. Greyhound Lines, Inc.*, Case No. 2:18-cv-00488-MHT-GMB; *Lietzke v. City of Birmingham*, Case No. 2:18-cv-00469-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:18-cv-00395-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:18-cv-00027-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:18-cv-00012-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:17-cv-00812-MHT-GMB; *Lietzke v. County of Montgomery*, Case No. 2:17-cv-00714-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:17-cv-00713-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:17-cv-00712-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:17-cv-00711-MHT-GMB; *Lietzke v. County of Montgomery*, Case No. 2:17-cv-00674-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:17-cv-00628-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:17-cv-00626-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:17-cv-00614-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:17-cv-00609-MHT-GMB; *Lietzke v. City of Montgomery*, Case No. 2:16-cv-00950-WKW-TFM; *Lietzke v. City of Montgomery*, Case No. 2:16-cv-00949-WKW-TFM; *Lietzke v. City of Montgomery*, Case No. 2:13-cv-00849-MHT-CSC; *Lietzke v. County of Montgomery*, Case No. 2:07-cv-00943-WKW-TFM; *Lietzke v. City of Montgomery*, Case No. 2:07-cv-00932-WKW-WC; *Lietzke v. County of Montgomery, Alabama*, Case No. 2:07-cv-00814-MHT-WC; *Lietzke v. City of Montgomery*, Case No. 2:07-cv-00588-ID-WC; *Lietzke v. McKinney*, Case No. 2:07-cv-00383-WKW-TFM; *Lietzke v. Bright*, Case No. 2:07-cv-00324-WHA-WC; *Lietzke v. City of Montgomery*, Case No. 2:03-cv-00584-MEF-CSC; *Lietzke v. Winn Dixie, Inc.*, Case No. 2:97-cv-01752-WHA-CSC.

In 2007, while addressing the second of what would become many iterations of Lietzke's complaints arising out of his involuntary commitments in 1999 and from 2002-03, the court stated:

> The undersigned [United States Magistrate Judge Wallace Capel, Jr.] … observes that Lietzke repeatedly files meritless Complaints in this Court…. While the Court recognizes that Lietzke is a *pro se* litigant, the Court is concerned that Lietzke's repeated filings constitute an abuse of process, which could warrant sanctions.

*Lietzke v. County of Montgomery, et al.*, Case No. 2:07-cv-00814-WKW-WC, October 10, 2007 Report and Recommendation of the Magistrate Judge (Doc. No. 5 at 5 n.3), *report and recommendation adopted*, November 9, 2007 Order (Doc. No. 6).

In February 2008, the third time this court dealt with a complaint alleging claims arising out of Lietzke's involuntary commitments in 1999 and 2002, then-United States Magistrate Judge Terry F. Moorer[7] reiterated Judge Capel's concerns about abuse of process and further stated:

> Apparently undeterred by the notice [Judge Capel] provided regarding the limited jurisdiction of federal courts, the glaring deficiencies of his lawsuit, and penalties for abusing the privilege of proceeding without paying filing fees and costs, Lietzke filed this and one other action in October of 2007.[8]

---

[7] In 2008, Judge Moorer was a United States Magistrate Judge in this District. He is now a United States District Judge in the United States District Court for the Southern District of Alabama.

[8] *See Lietzke v. City of Montgomery, et al.*, Civil Action No. 2:07-cv-932-WKW, a case in which Lietzke claimed that police violated his constitutional rights on several occasions from 2005 through 2007 when they allegedly arrested him, briefly stopped him, spoke harshly to him, or merely asked him questions from the window of a patrol car, including occasions in which he was reported to have been flagging down cars, walking and running in the middle of the street, and trying to stop cars.

Lietzke is advised, as this court has consistently reminded similarly situated *pro se* litigants, the privilege of filing a federal court lawsuit without prepayment of filing fees properly acknowledges a "right of access to courts" which is constitutionally secured for all American citizens. The privilege is subject, however, to valid and reasonable limitations designed not only to conserve limited judicial resources, but also to prevent abuse by unlearned laymen who may be tempted to seize the privilege as a license for limitless or misguided forays into federal court with bootless claims and grievances unresolved in other forums or for which there simply is no remedy. Frivolous or malicious lawsuits against any defendants – corporate, public, institutional, or individual – automatically result in inconveniences, burdens, and costs, associated with defense even to the extent of securing dismissal from the action.

This court also deems it appropriate now to advise Lietzke that *pro se* litigants are also bound to honor Rule 11 of the Federal Rules of Civil Procedure, which provides in pertinent part at Rule 11(b):[9]

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

---

[9] Since 2008, Rule 11 has been amended, but Lietzke is advised that Rule 11 remains the same in substance and he is bound to abide by it.

A plaintiff may incur a substantial penalty for non-compliance with this rule by filing a federal court lawsuit without first conducting "an inquiry reasonable under the circumstances" in order to inform his "knowledge, information, and belief" about the merits of the lawsuit. Rule 11(c)(2) provides:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

*Lietzke v. County of Montgomery, et al.*, Case No. 2:07-cv-00943-WKW-TFM, February 15, 2008 Report and Recommendation of the Magistrate Judge (Doc. No. 7 at 11-13), *report and recommendation adopted in part, rejected in part on other grounds*, March 3, 2008 Order (Doc. No. 8).

In May 2008, United States District Judge William Keith Watkins noted Lietzke's status as "a frequent filer" in this District and "around the country" and dismissed certain of Lietzke's claims with prejudice "[b]ecause Lietzke continues to file these claims in courts around the country despite the determination that they are frivolous." *Lietzke v. City of Montgomery, et al.*, Case No. 2:07-cv-00932-WKW-WC, May 16, 2008 Order (Doc. No. 6 at 6-8, 16).

In 2013, faced with a complaint of Lietzke's asserting substantially the same claims as before arising out of involuntary commitments in 1999 and 2002, Judge Renee Harris Toliver, a United States Magistrate Judge in the Northern District of Texas, recommended

denial of Lietzke's motion to proceed *in forma pauperis*, summary dismissal, and imposition of sanctions, stating:

> Plaintiff, an Alabama resident, filed a *pro se* civil rights complaint against Montgomery County, Alabama, and Alabama residents Reese McKinney, D. T. Marshall, and an unidentified Sheriff Officer, along with a motion to proceed *in forma pauperis*. For the reasons that follow, it is recommended that this action be summarily dismissed.

## I. BACKGROUND

Plaintiff asserts that in 1999 and 2002, Defendants seized him from his home and involuntarily confined him in a psychiatrist hospital following various hearings in probate court. (Doc. 3 at 2-7). He seeks monetary damages for false imprisonment, malicious prosecution, harassment, and kidnapping – claims that Plaintiff has unsuccessfully litigated in at least three other actions. *See Lietzke v. County of Montgomery*, No. 2:07-CV-943 (M.D. Alabama Mar. 3, 2008) (accepting recommendation and dismissing case as frivolous because it was barred by *res judicata*, statute of limitations, and absolute immunity). *See also Lietzke v. County of Montgomery, et al*., No. 1:12-CV-00145, 2012 WL 5449623 (D. Idaho May 29, 2012), *accepting recommendation*, 2012 WL 5449617 (D. Idaho Nov. 5, 2012) (dismissing as frivolous because jurisdiction and venue were lacking); *Lietzke v. County of Montgomery, et al*., No. 2:12-CV- 00268, 2013 WL 1033037 (D. Utah Feb. 21, 2013), *accepting recommendation*, 2013 WL 1031725 (D. Utah Mar. 14, 2013) (same).

Over the past ten years, Plaintiff has filed more than twenty cases in federal courts nationwide against these and other Alabama residents complaining of related civil rights violations. *See* Public Access to Courts Electronic Records (PACER) for a full listing of Plaintiff's cases. A random sampling indicates that the vast majority of these lawsuits were dismissed as frivolous and/or for failure to state a claim. At least one court has restricted Plaintiff from filing new lawsuits. *See Lietzke v. City of Montgomery, et al*., No. 3:06-CV-1804 (D. Or. Mar. 19, 2007) (imposing pre-filing requirement which requires that all pleadings be "reviewed by this Court and ordered filed only if such filings are deemed not frivolous or repetitive.")

## II. ANALYSIS

Federal courts have the authority to levy sanctions against *pro se* litigants and attorneys who violate Rule 11(b), of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 11(b) and (c)(1); *Whitehead v. Food Max of Miss., Inc*., 332 F.3d 796, 802-03 (5th Cir. 2003) (a violation of any provision of Rule 11(b) justifies sanctions). Sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims. *Mendoza v. Lynaugh*, 989 F.2d 191, 195-97 (5th Cir. 1993). Litigants who abuse the judicial process are "not entitled to sue and appeal without paying the normal filing fees -- indeed, are not entitled to sue and appeal, period." *Free v. United States*, 879 F.2d 1535, 1536 (7th Cir. 1989).

Here, Plaintiff's allegations duplicate the claims that he has pursued unsuccessfully in the Middle District of Alabama and in the Districts of Idaho and Utah. Thus, his complaint is frivolous. *See Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (a complaint is frivolous when it "duplicates allegations of another pending federal lawsuit by the same plaintiff"). In light of the duplicative nature of the complaint and Plaintiff's lengthy and notorious history of filing repetitive, frivolous lawsuits, his request to proceed *in forma pauperis* should be denied and sanctions should be imposed. *See* FED. R. CIV. P. 11(b)(2) and (c)(1); *Canzoneri v. McCormick*, No. 3:12-CV-1241-G-BK, 2012 WL 1864309 (N.D. Tex. Apr. 26, 2012), *recommendation accepted*, 2012 WL 1864282 (N.D. Tex. May 22, 2012) (denying *in forma pauperis* motion and imposing sanctions because of plaintiff's history of filing frivolous, repetitive lawsuits).

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's motion to proceed *in forma pauperis* be DENIED, and that Plaintiff be BARRED from filing future *in forma pauperis* actions in this Court without first seeking leave to file. It is further recommended that Plaintiff be WARNED that the continued submission of frivolous actions and documents may result in the imposition of additional sanctions, including monetary penalties.

*Lietzke v. County of Montgomery, et al.*, Case No. 2:13-cv-04468-B-BK (N.D. Tex.),

November 12, 2013 Report and Recommendation of the Magistrate Judge (Doc. No. 6 at

1-4 (footnote omitted)), *report and recommendation adopted*, March 3, 2008 Order (Doc.

No. 8) (adopting the recommendation and ordering that "Plaintiff is **BARRED** from filing

future *in forma pauperis* actions in this Court without first seeking leave to file. In addition, Plaintiff is **WARNED** that the continued submission of frivolous actions and documents may result in the imposition of additional sanctions, including monetary penalties.").

In August 2018, United States Magistrate Judge Gray M. Borden observed in a Report and Recommendation entered in fifteen different cases Lietzke had filed, nearly all of which were or would eventually become redundant filings:

> Put simply, Lietzke's *modus operandi* is to engage in a pattern of filing frivolous lawsuits both in this and other federal district courts throughout the country in flagrant violation of appropriate judicial process and procedure. Most recently, a district court in Nevada observed that Lietzke had filed eight cases in that district with identical allegations against Alabama defendants, noting that "[d]espite repeated warnings against filing frivolous lawsuits, [Lietzke] continues to abuse the judicial process." *Lietzke v. City of Montgomery*, 2018 WL 702889, at *1 (D. Nev. Feb. 2, 2018). That court thus declared Lietzke a vexatious litigant pursuant to 28 U.S.C. § 1651, enjoining him from filing any new lawsuits in that district without first obtaining leave from the court's Chief Judge. *See id*. Lietzke's 15 pending complaints stating nearly identical factual allegations reflect his scattershot approach to seeking relief in federal court based on claims that are not remotely actionable. This court ought not entertain his continued abuse of the judicial process and recommends the dismissal of all of his pending federal claims.

*Lietzke v. Greyhound Lines, Inc*., Case No. 2:18-cv-00488-MHT-GMB, August 8, 2018 Report and Recommendation of the Magistrate Judge (Doc. No. 4 at 20-21 (footnote omitted)), *report and recommendation adopted in part, rejected in part on other grounds*, August 23, 2018 Order (Doc. No. 7).

On May 19, 2019, after detailing Lietzke's history in the District of Montana of repeated serial filings made without any effort to correct deficiencies noted in previous dismissals, Chief United States District Judge Dana L. Christensen of the District of

Montana wrote: "Enough is enough. Lietzke's filings in this Court demonstrate, at best, indifference to the law. He is not acting in good faith." *Lietzke v. City of Birmingham, et al.*, Case No. 9:19-cv-61-M-DLC, April 19, 2019 Order (Doc. No. 3 at 3). After ordering Lietzke to show cause why he should not be declared a vexatious litigant subject to a prefiling review process, Judge Christensen declared him a vexatious litigant, summarily dismissed five frivolous complaints Lietzke had filed, and imposed preconditions on Lietzke's ability to file cases in the District of Montana. *Lietzke v. City of Birmingham, et al.*, Case No. 9:19-cv-61-M-DLC, May 10, 2019 Order (Doc. No. 5).

In 2020, United States District Judge R. David Proctor dismissed another repeat complaint against Greyhound Lines not only as barred by *res judicata*, but as frivolous and malicious "[b]ased on Plaintiff's serial filings in this court and courts around the country." *Lietzke v. Greyhound Lines*, *Inc*., Case No. 2:20-cv-01968-RDP (N.D. Ala.) (Doc. No. 8).

In December 2020, in a case Lietzke filed against Defendant Greyhound Lines arising out of the April 20, 2018 incident at the Birmingham, Alabama, Greyhound bus terminal, United States District Judge Abdul K. Kallon observed:

> Lietzke is apparently a prolific litigant. As Judge Manske of the Western District of Texas pointed out when he transferred this case to this court: "Bill Lietzke is perhaps one of the most notorious vexatious litigants to ever appear before this Court. Li[e]tzke has continually filed frivolous lawsuits against the City of Montgomery, Alabama, and its police officers for more than a decade. Lietzke has filed similar cases in districts across the country." Doc. 3 at 1–2 (quotation and citation omitted).

*Lietzke v. Greyhound Lines*, *Inc*., Case No. 2:20-cv-01965-RKK, Dec. 14, 2020 Order (Doc. No. 5 at 2 n.1) (N.D. Ala. Dec. 14, 2020).

C.     Consequences for Serial Frivolous Filings

Despite many warnings and consequences from this and other courts, Lietzke has continued to serially file substantially the same lawsuits again and again here and in courts all across the country. Something must be done. His vexatiously repetitive complaints are not harmless. "Every lawsuit filed, no matter how frivolous or repetitious, requires the investment of court time, whether the complaint is reviewed initially by a law clerk, a staff attorney, a magistrate [judge], or the [district] judge." *Procup v. Strickland*, 792 F.2d 1069, 1072 (11th Cir. 1986). Though Lietzke's complaints are invariably dismissed prior to service of process, they repeatedly waste scarce judicial resources by requiring the court to address the same deficiencies again and again and again. At times, the court unnecessarily duplicates the work of other courts because it is unaware[10] that some other court has already addressed the deficiencies in the same complaint. Even as this Order is being drafted, judicial resources are being once again diverted from pressing matters to address ten serial, frivolous filings[11] by Lietzke. *See Thomason v. Deutsche Bank, Tr. for Home Equity Mortg.*

_____

[10] Lietzke habitually omits from his filings any information related to previous dismissals or concurrent litigation of the same matters, and each time he files a complaint in this District, the court simply does not have the resources to review the records of every other federal and state court in the country to determine whether he has previously pursued or is currently pursuing the same case elsewhere.

[11] Today, the undersigned is entering Recommendations in the following cases: *Lietzke v. County of Montgomery*, Case No. 2:21-cv-00209-MHT-JTA; *Lietzke v. Greyhound Lines, Inc.*, Case No. 2:21-cv-00208-WKW-JTA; *Lietzke v. City of Montgomery*, Case No. 2:21-cv-00207-ECM-JTA; *Lietzke v. City of Birmingham*, Case No. 2:21-cv-00206-ECM-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01033-MHT-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01032-WKW-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01030-ECM-JTA; *Lietzke v. City of Montgomery*, Case No. 2:20-cv-01029-RAH-JTA; and *Lietzke v. County of Montgomery*, Case No. 2:20-cv-01028-ECM-JTA.

*Loan Asset-Backed Tr. Series INABA 2006-A, Home Equity Mortg. Loan Asset-Backed Certificates Series INABS 2006-A8*, No. 2:22-CV-52-ECM, 2022 WL 4371492, at *8 (M.D. Ala. Sept. 21, 2022) (declaring that the plaintiff was "an abusive and vexatious litigant" because he "wasted valuable Court resources" by "fil[ing] the same or substantially the same" claims against the same defendant despite "being repeatedly told by this Court (and probably others) that his claims … are without merit").

In light of the previous warnings by this court and others, Lietzke's repetitive filings in this court and elsewhere are not merely careless mistakes. Lietzke has been told that he violates Rule 11(b) of the Federal Rules of Civil Procedure by repeatedly filing complaints that he knows are frivolous and that fail to state a claim upon which relief can be granted. Further, as Judge Capel warned Lietzke years ago, filing claims that he knows are without merit constitutes vexatious abuse of process warranting appropriate sanctions. "'[F]ederal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.'" *Shell v. U.S. Dep't Of Hous. And Urb. Dev.*, 355 F. App'x 300, 308 (11th Cir. 2009) (quoting *Martin–Trigona v. Shaw*, 986 F.2d 1384, 1386–87 (11th Cir. 1993)). Courts may sanction such conduct, and they also have considerable discretion in crafting injunctions to protect against abusive and vexatious litigation, so long as the plaintiff is not completely closed off from any access to the court. *Id.*; *Thomason*, 2022 WL 4371492, at *8; *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (noting the court's inherent authority "to fashion an appropriate [compensatory] sanction for conduct which

abuses the judicial process'" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).

As explained in more detail, *infra*, in Section III.D. of this Recommendation and Order, this current case is yet another case in which Lietzke has sued the City of Montgomery and its officers based on the exact kind of brief encounter with police that courts have informed him over and over cannot sustain a claim. He must be deterred from filing frivolous suits of this type. In addition, given his history, it is likely that he will refile this case again here or elsewhere, and, in the event that the case finds its way here again, requiring him to notify this court of the previous adjudication of this same case will conserve judicial resources. On the basis of the court's inherent power and obligation to protect litigants and its own judicial resources from vexatious and abusive litigation, and to deter Lietzke from impairing the court's function in the future by filing vexatious and repetitive complaints, the undersigned has considered carefully what injunctive consequences to recommend. The undersigned concludes that the following consequences suffice to deter Lietzke from frivolously and vexatiously refiling this case again, enable the court to efficiently evaluate whether any future case Lietzke files is frivolously or vexatiously duplicative of other litigation here or elsewhere, do not completely foreclose Lietzke from filing actions in this court, and avoid unduly burdening the court with extra prefiling review processes for handling vexatious litigants:

1. The undersigned recommends that Lietzke be declared a vexatious litigant because, despite many warnings and consequences, he repeatedly files the same cases here

and elsewhere when he knows his complaints are frivolous and fail to state a claim upon which relief can be granted, and he repeatedly files claims arising out of the kind of brief police encounters he has already been told many times do not give rise to constitutional claims. *See Thomason*, 2022 WL 4371492, at *8 (declaring that the plaintiff was "an abusive and vexatious litigant" because he "wasted valuable Court resources" by "fil[ing] the same or substantially the same" claims against the same defendant despite "being repeatedly told by this Court (and probably others) that his claims … are without merit").

2. Further, the undersigned recommends that the court order that Lietzke shall not file in this District any more motions to proceed *in forma pauperis* without an accompanying notarized affidavit, sworn under penalty of perjury, in which he states whether he has ever filed any lawsuits in any court arising out of the same incident(s), acts(s), or occurrence(s) as are implicated in the complaint on which he seeks to proceed *in forma pauperis*. If he has filed any related lawsuits, he must include in his signed, notarized affidavit the name of the court(s) where each such lawsuit was filed, the case number of the related case(s), and the status of the related litigation. He must also attach to his sworn, notarized affidavit (1) a current copy of the docket sheet for each such case and (2) a copy of each and every complaint that he has filed in any such case. Any such attached copy of a complaint shall bear the dated "filed" stamp of the Clerk of the Court in which it was filed, or it shall bear the mark of the CM/ECF (PACER) system showing that it is a copy of the complaint

that is in the official court record. Failure to follow these instructions shall result in denial of the motion to proceed *in forma pauperis* and may result in dismissal of the case with or without prejudice for failure to comply with the court's orders. *See Procup*, 792 F.2d at 1072 (11th Cir. 1986) (listing approaches courts have used to address litigants who bring frequent or repetitive claims, including "requiring litigants to accompany all future pleadings with affidavits certifying that the claims being raised are novel, subject to contempt for false swearing" and "direct[ing] the litigant to attach to future complaints a list of all cases previously filed involving the same, similar, or related cause of action, and to send an extra copy of each pleading filed to the law clerk of the chief judge of the district").

Lietzke is ADVISED that, whether or not the court adopts the recommendation in the preceding paragraph, in any case pending before the undersigned, the undersigned will require Lietzke to comply with the preceding paragraph before the undersigned grants any more applications to proceed *in forma pauperis* and before the undersigned undertakes the review process required by 28 U.S.C. § 1915(e)(2)(b).

Further, Lietzke is ADVISED that he will be subject to sanctions or further injunctive action in the future for filing a complaint that has been dismissed with prejudice as frivolous and for failure to state a claim upon which relief can be granted, or for filing a complaint that has been dismissed without prejudice on the same grounds without making any meaningful attempt to amend the complaint to address the deficiencies. Sanctions for such conduct may include, but are not limited to, dismissal of his case with or without

22

prejudice, payment of attorneys' fees in the event that another party incurs them, other monetary sanctions, or limitations on his ability to file suit in this court without preapproval. Such sanctions may be imposed pursuant to Rule 11 of the Federal Rules of Civil Procedure, this court's inherent authority to manage its own docket "so as to achieve the orderly and expeditious disposition of cases" and compliance with its orders, *Chambers*, 501 U.S. at 43, the court's inherent authority to impose a compensatory sanction on conduct that abuses the judicial process, Rule 41(b)[12] of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1651.

D.     Lietzke's Complaint in This Case

In this case, Lietzke asserts constitutional and state law claims against Defendants City of Montgomery, Alabama, and Mayor Steven L. Reed for the conduct of unnamed Montgomery police officers who, on or about September 30, 2020, stopped Lietzke at his front door to inquire about an alarm system that had been going off, and to ask Lietzke, "What you doing here?" (Doc. No. 1 at ¶¶ 7-8 (sic).) Lietzke requests relief in the form of an apocalyptic judgment concerning a pale horse, the Book of Life, and a Lake of Fire.

Lietzke alleges that, as a proximate result of the unnamed officers' conduct, he was deprived of his First and Fifth Amendment rights. (*Id.* at ¶ 9.) However, based on the

---

[12] Though Rule 41(b) refers specifically to dismissal on a defendant's motion, "[a] federal district court has the inherent power to dismiss a case *sua sponte* under Federal Rule of Civil Procedure 41(b) if the plaintiff fails to comply with a court order." *Rodriguez v. Lawson*, 848 F. App'x 412, 413 (11th Cir. 2021) (citing *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005)).

allegations in the Complaint, which, even under the most generous construction, do not lend themselves to First and Fifth Amendment Claims,[13] the court interprets the Complaint as instead containing claims pursuant to 42 U.S.C. § 1983 for false imprisonment and deprivation of due process in violation of the Fourth and Fourteenth Amendments, which Lietzke does not mention in his Complaint. The court also construes Lietzke's Complaint as containing state law claims for false imprisonment, defamation, and intentional infliction of emotional distress. (*Id.* at ¶ 9.)

---

[13] Lietzke has been told many times that similar incidents did not give rise to First and Fifth Amendment Claims, so the court will not belabor the explanation here, only sum up. On past occasions in similar cases Lietzke has filed, his First and Fifth Amendment claims tend to be ones alleging that police forced him to testify against himself by briefly stopping him to speak with him about anonymous citizen complaints (such as reports that Lietzke or someone matching his description was walking or running in traffic, walking down the interstate, flagging down cars, or following a woman), requesting identification, and asking him, "What's going on?" As in Lietzke's previous cases, nothing in the Complaint suggests that Lietzke was compelled to speak, and this court has explained to him on many occasions that the Fifth Amendment is not implicated when police merely briefly interact with someone or ask them questions without arresting them or compelling them to speak, and in the absence of any criminal proceedings. *See*, *e.g.. Lietzke v. City of Montgomery*, *et al.*, Case No. 2:18-cv-00713-MHT-GMB, August 8, 2018 Report and Recommendation of the Magistrate Judge (Doc. No. 4 at 18-19 (citations omitted)), *report and recommendation adopted in part, rejected in part on other grounds*, August 23, 2018 Order (Doc. No. 7). To the extent that Lietzke intends to assert a Fifth Amendment claim for deprivation of liberty without due process, the analysis of that claim is subsumed within the court's Fourteenth Amendment analysis. *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) ("The Fifth Amendment [is] made applicable to the States by the Fourteenth Amendment."). *Cf. Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law.").

E.   Lietzke's § 1983 Claims for Fourth and Fourteenth Amendment Violations

   1.   Lietzke's § 1983 Claims Do Not State a Cause of Action for Fourth and Fourteenth Amendment Violations

On many prior occasions, courts (including this one) have informed Lietzke of the meritlessness of Fourth and Fourteenth Amendment claims for false imprisonment in cases like this one, where police briefly interact with him to question him in a similar manner while investigating various reports and incidents, such as when police had knowledge that he or a person matching his description had been involved with traffic in various unsafe and unlawful ways unbecoming a pedestrian (*e.g.*, walking or running in traffic, walking along the interstate, and flagging down cars). He has been similarly advised in situations where police requested his identification, questioned him about a report he had been following a woman, and asked him, "What's going on?" *See, e.g., Lietzke v. City of Montgomery*, *et al.*, Case No. 2:18-cv-00713-MHT-GMB, August 8, 2018 Report and Recommendation of the Magistrate Judge (Doc. No. 4), *report and recommendation adopted in part, rejected in part on other grounds*, August 23, 2018 Order (Doc. No. 7). Similarly, in this case, police merely questioned him outside his home about an alarm that had been going off and asked him what he was doing "here."

For twenty years, Lietzke has been told numerous times that, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality like Defendant City of Montgomery may not be held liable for a § 1983 violation under a theory of *respondeat*

*superior* for the actions of its employees. *Lietzke v. City of Montgomery*, No. 218CV2706KJMDBPS, 2019 WL 1469195, at *2 (E.D. Cal. Apr. 3, 2019) (dismissing the complaint with leave to amend after explaining the elements and pleading requirements of *Monell* claims); *see also, e.g., Lietzke v. City of Montgomery, et al.*, Case No. 2:07-cv-00932-WKW-WC, May 16, 2008 Order (Doc. No. 6 at 10-13); *Lietzke v. City of Montgomery*, Case No. 2:03-cv-00584-MEF-CSC (Doc. No. 21). He has been told numerous times how to properly plead claims against a municipal defendant, *see, e.g., Lietzke v. City of Montgomery*, 2019 WL 1469195, at *2, and he has not done so here. His Complaint alleges no facts from which an unconstitutional policy or custom can reasonably be inferred. In fact, he alleges no policy or custom at all.

Lietzke has also been told numerous times that mayors and police chiefs cannot be held liable pursuant to § 1983 on a theory of *respondeat superior*. Lietzke has been notified that, to survive § 1915 review on claims like the one he asserts here against a mayor like Defendant Reed based on the conduct of unnamed city police officers, he must allege facts sufficient to support the inference that the mayor personally participated in the constitutional deprivation or that the mayor's actions bore a causal relationship to the constitutional deprivation. *See Lietzke v. City of Montgomery, et al.*, Case No. 2:07-cv-00932-WKW-WC, May 16, 2008 Order (Doc. No. 6 at 13-14). He has pled no such facts here.

Lietzke alleges that police "stopped" him outside his home on "Holcomb[e] Street"[14] (Doc. No. 1 at ¶ 7) to ask him questions about an alarm that had been going off and to ask him what he was doing in the area. Nothing in the Complaint suggests that Lietzke was detained or otherwise prevented from leaving the conversation with the police by, for example, simply walking away or going inside his house. Lietzke has also been told numerous times that he is not unlawfully seized without due process in violation of the Fourth Amendment when police merely approach to question or speak with him without any restraint on his liberty. *See, e.g., Lietzke v. City of Montgomery*, *et al*., Case No. 2:18-cv-00713-MHT-GMB, August 8, 2018 Report and Recommendation of the Magistrate Judge (Doc. No. 4 at 15-17), *report and recommendation adopted in part, rejected in part on other grounds*, August 23, 2018 Order (Doc. No. 7); *Lietzke v. City of Montgomery*, Case No. 2:13-cv-00849-MHT-CSC (Doc. No. 32 at 4-7). He knows that, to survive § 1915 review, his Complaint must allege facts from which it can be reasonably inferred that his liberty was restrained. *See United States v. Drayton*, 536 U.S. 194, 204 (2002) (noting that, where "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice," it was " beyond question that had this encounter occurred on the street, it would be constitutional"); *Lietzke v. City of Montgomery*, *et al*.,

---

[14] Lietzke's address (which he provides the court in his Complaint) is less than two blocks from the Frank M. Johnson United States Courthouse, where the United States District Court for the Middle District of Alabama sits. The court takes judicial notice that "Holcombe" is the correct spelling of the street name.

Case No. 2:18-cv-00713-MHT-GMB, August 8, 2018 Report and Recommendation of the Magistrate Judge (Doc. No. 4 at 16) (quoting *Drayton*, 536 U.S. at 204); *Lietzke v. City of Montgomery*, Case No. 2:13-cv-00849-MHT-CSC (Doc. No. 32 at 4-7) ("'Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions [and] ask for identification … provided they do not induce cooperation by coercive means.'" (quoting *Drayton*, 536 U.S. at 201)). In 2013, United States Magistrate Judge Charles S. Coody not only informed Lietzke by written order, but also explained patiently, simply, and thoroughly to Lietzke in person in open court, that Lietzke's stated belief that police had no right to speak to him without arresting him on probable cause was "simply not the law" and that "'there is nothing in the Constitution [that] prevents a policeman from addressing questions to anyone on the streets.'" *Lietzke v. City of Montgomery*, Case No. 2:13-cv-00849-MHT-CSC (Doc. No. 32 at 6-7) (quoting *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003) (quoting in turn *Terry v. Ohio*, 392 U.S. 1, 34, (1968) (Whie, J. concurring))); *see also Franklin*, 323 F.3d at 1301 (holding that, even assuming police officers lacked suspicion, they could still approach a citizen and speak to him). Further, as Lietzke by now knows, it "is well settled" that police "'may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *Franklin*, 323 F.3d at 1301 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Yet, Lietzke's Complaint contains no allegations from which it could be inferred that Lietzke was not free to leave, such as allegations that he was commanded not to leave or that the officers physically

restrained him or blocked his movement so that he could not leave or simply go inside his home. The Complaint also contains no allegations from which it reasonably can be inferred that the police lacked a constitutionally-permitted basis to speak to him, as Lietzke alleges that they were investigating an alarm that had been going off, and as he does not allege that they did anything more than address some questions to him while he was outside his home.

Lietzke has also been informed many times that officers do not violate his Fourteenth Amendment due process rights by merely questioning him without restraining his liberty. *See*, *e.g.*, *Lietzke v. City of Montgomery*, *et al.*, Case No. 2:18-cv-00713-MHT-GMB, August 8, 2018 Report and Recommendation of the Magistrate Judge (Doc. No. 4 at 19-20). Still, here we are again.

Not only are Lietzke's § 1983 claims due to be dismissed because he fails to state a claim upon which relief can be granted, but his § 1983 claims are frivolous and malicious. *See Bilal v. Driver*, 251 F.3d 1346, 1350 (11th Cir. 2001) (holding that, in determining whether a complaint is frivolous and malicious, "a litigant's history of bringing unmeritorious litigation can be considered"). Despite Lietzke's two-decade history of meritless and "frivolous lawsuits against the City of Montgomery, Alabama and its police officers" and of being told many times the legal necessities and pleading requirements, he has filed yet another Complaint that arises out of a brief police encounter and that fails to contain even the barest facts needed to sustain a claim. *Lietzke v. City of Montgomery*, No. 2:17-CV-609-MHT-GMB, 2018 WL 4677837, at *1 (M.D. Ala. Aug. 8, 2018); *Lietzke v. City of Montgomery*, Case No. 2:03-cv-00584-MEF-CSC. Allowing an opportunity to

amend would be unwarranted, utterly futile, and a waste of scarce judicial resources. *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (holding that, "[w]hile a *pro se* litigant generally must be given at least one opportunity to amend his complaint," before dismissal for failure to state a claim upon which relief can be granted, "a district judge need not allow an amendment where amendment would be futile"); *see also Nezbeda v. Liberty Mut. Ins. Corp.*, 789 F. App'x 180, 183 (11th Cir. 2019) ("The district court may dismiss a plaintiff's claims *sua sponte*—without requiring or permitting the plaintiff to amend—if it concludes that the claims are frivolous." (citing *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (citing in turn § 1915(e)(2)(B)(i)))).

Accordingly, the court recommends that Lietzke's § 1983 claims be dismissed without an opportunity to amend [15] pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) as frivolous and malicious and for failure to state a claim upon which relief can be granted.

2. Alternatively, Lietzke's § 1983 Claims Are Due to Be Dismissed Because He Seeks Relief That is Beyond the Power of This Court to Grant

Despite Lietzke's unexplained contention that "the amount in controversy exceeds, exclusive of interests and costs, $1,000,000,000" (Doc. No. 1 at ¶ 6 (sic)), which,

---

[15] Despite this Recommendation, if Lietzke wishes to address the deficiencies in his Complaint, he is not without recourse. "Plaintiff will be permitted to file objections to the findings set forth in this Recommendation, and thus he is afforded the requisite opportunity to be heard about the deficiencies of his [C]omplaint prior to any dismissal of the [C]omplaint." *Larkins v. Montgomery Cnty. Cir. Ct.*, No. 2:19-CV-281-MHT-WC, 2020 WL 2744116, at *6 n.3 (M.D. Ala. Apr. 21, 2020), *report and recommendation adopted*, No. 2:19CV281-MHT, 2020 WL 2739821 (M.D. Ala. May 26, 2020).

presumably, is his estimated valuation of Defendants' immortal souls, Lietzke's demand

for relief, in full, is as follows:

> Wherefore Plaintiff will receive this Judgment, Wherefore Plaintiff orders this Judgment, Wherefore Plaintiff demands this Judgment, WHEREFORE THIS IS YOUR JUDGMENT:
>
> 1.      And I looked and beheld a pale horse, YOU, and the name of them that sat upon it was Death, YOU, and Hell followed, YOU, and it set out to conquer a fourth part of the Earth, to kill with the sword, and with hunger, and with the beasts of the Earth, and with Death, YOU.
>
> 2.      And I saw the Great White Throne [of] Judgment, and Him that sat upon it from whose face the Earth and Heaven fled away, and there was found no place for them, YOU, and I saw the dead, YOU, both great and small, and the books were opened, YOU, and another book was opened which is the Book of Life, and the dead, YOU, and the dead, YOU, were judged out of those things which were written in the books according to their works.
>
> 3.      And Death and Hell, YOU, were cast into the Lake of Fire, YOU. This is the Second Death, YOU. And whosoever, YOU, was not found written in the Book of Life was cast into the Lake of Fire, YOU.

(Doc. No. 1 at 2-3.)

As is plain from the demand for relief, Lietzke does not seek monetary, injunctive,

or declaratory relief, though he is capable of requesting monetary and equitable relief (as

he has on many previous occasions).[16] The leniency afforded the construction of *pro se*

---

[16] *See*, *e.g.*, *Lietzke v. City of Birmingham, et al.*, Case No. 2:18-cv-01729-MHH (N.D. Ala) (Doc. No. 1 at ¶ 10) (demanding "Actual, Punitive, and Compensatory Damages against all Defendants for $2,000,000,000.00" (sic)); *Lietzke v. Greyhound Lines, Inc.,* Case No. 2:18-cv-01852-KOB (N.D. Ala) (Doc. No. 1 at 9) ("WHEREFORE, the Plaintiff demands judgment against all Defendants for Punitive Damages, Actual Damages, Compensatory Damages, and Irreparable Damages, of $2,000,000,000.00."); *Lietzke v. City of Montgomery, et al*., Case No. 2:18-cv-395-MHT-GMB (Doc. No. 1) (demanding "Punitive, Actual, and Compensatory damages, and judgment therefor, against" Defendants City of Montgomery, Kevin Murphy, and "[u]nidentified,

pleadings is not license for the court "'to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading . . . to sustain a cause of action." *Nails*, No. CIV.A. 2:10CV826, 2011 WL 310254, at *1 (citations omitted). Accordingly, and in light of what

---

unspecified Defendants" "for the sum of $2,500,000,000.00" because police stopped him on "January 30, 201" (sic) to investigate reports from members of First Baptist Church that he had been following a woman on church property, and to ask whom he had been following, causing Lietzke to suffer "righteous indignation and personal humiliation as a proximate result of LIBEL AND SLANDER of the Defendants" (all caps emphasis in original)); *Lietzke v. City of Montgomery, et al.*, Case No. 2:17-cv-812-MHT-GMB (Doc. No. 1) (demanding "Punitive damages, Actual damages, and Compensatory damages, and judgment therefor, against [Defendants City of Montgomery and Kevin Murphy] for the total amount of $1,000,000,000.00" because police briefly stopped him on November 8, 2017 on the I-85 Interstate to investigate a report that "'a black male was walking on the interstate between Union Street and Ann Street'" and then "proceeded to demand that the Plaintiff exit the I[-]85 Interstate and take an alternative route to the Walmart supermarket;" though Lietzke admitted in his Complaint that police stopped him *on the interstate* and that he *had* been walking down the interstate because it was the fastest route to Walmart, he also alleged that the stop was "without probable cause"); *Lietzke v. City of Montgomery, et al.*, Case No. 2:17-cv-713-MHT-GMB (Doc. No. 1) (demanding "judgement against the City of Montgomery, Et Al for Punitive Damages, Actual damages, and Compensatory damages of $1,000,000,000.00" because police briefly stopped him on March 4, 2015 on the I-85 Interstate to investigate a report that he was "'running in the traffic lanes' and/or 'walking in the traffic lanes' and/or 'disrupting traffic,'" only to "release[] the Plaintiff and direct[] the Plaintiff to exit the I[-]85 Interstate and proceed at an alternate route towards downtown Montgomery"); *Lietzke v. City of Montgomery, et al.*, Case No. 2:17-cv-628-MHT-GMB (Doc. No. 1) (demanding "Punitive Damages, Actual Damages, and Compensatory Damages and judgment therefor against all Defendants  for Defamation of the Plaintiff's character, Libel and Slander of the Plaintiff, Mental Anguish of the Plaintiff, and Constitutional Rights Violations, of $2,000,000,000.00" in a Complaint against Defendants City of Montgomery and Kevin Murphy because police briefly stopped him on May 26, 2017 to ask, "[w]hat's going on?" and to investigate a "false report" that he was "'chasing' someone"); *Lietzke v. City of Montgomery, et al.*, Case No. 2:17-cv-614-MHT-GMB (Doc. No. 1) (demanding "punitive damages, Actual damages, and compensatory damages and judgment therefor against all Defendants for the sum of $1,000,000,000.00" in a Complaint against Defendants City of Montgomery and Kevin Murphy because police briefly stopped him on April 28, 2017 to ask, "[w]hat's going on?"); *Lietzke v. City of Montgomery, et al.*, Case No. 2:17-cv-609-MHT-GMB (seeking "Compensatory Damages, Actual Damages, and Punitive Damages, in the amount of $1,000,000,000.00" against Defendants City of Montgomery and Kevin Murphy because police briefly stopped him to request identification). This is but a sampling of the vast number of similar cases in which Lietzke specifically demanded compensatory, punitive, and other types of damages.

appears to be Lietzke's deliberate omission of a request for such relief here, the court is not inclined to construe Lietzke's Complaint as containing a request for relief for monetary, declaratory, or injunctive relief.

The Complaint expressly and exclusively demands relief beyond the powers of this court to grant – namely, an order requiring that God initiate the apocalypse and impose divine retribution on Defendants from the Great White Throne of Judgment by casting them into the infernal Lake of Fire after judging them based on what is written about them in the Book of Life. Such relief is within the exclusive discretion of the divine whether to impose. *See Driskell v. Homosexuals*, 533 B.R. 281, 282 (D. Neb. 2015) (noting that federal courts have jurisdiction to "decide what is lawful, not what is sinful"). It is doubtful that God is subject to this court's personal jurisdiction, much less to an order of mandamus, and the United States District Court for the Middle District of Alabama is not so presumptuous as to usurp The Great White Throne of Judgment, any rumors to the contrary notwithstanding. *See United States ex rel. Mayo v. Satan & His Staff*, 54 F.R.D. 282, 283 (W.D. Pa. 1971) (denying a motion to proceed *in forma pauperis* after questioning the existence of personal jurisdiction over Defendants Satan and His Staff, and further noting the practical difficulties inherent in perfecting service on the defendants). *But see* Kevin Underhill, *God Responds to Nebraskan's Lawsuit*, LOWERING THE BAR (September 22, 2007), https://www.loweringthebar.net/2007/09/god-responds-to.html.

Additionally, in civil actions, relief is ordinarily limited to compensatory and injunctive measures, and, except in narrow circumstances in cases of civil contempt,

punitive relief generally takes the form of a monetary judgment rather than confinement. Even in cases of civil contempt, extended confinement beyond eighteen months (such as eternal confinement to a flaming body of water) is strictly prohibited. 28 U.S.C. § 1826(a). Moreover, casting Defendants in the eternal Lake of Fire as a punitive measure would probably run afoul of the Eighth Amendment's prohibition on cruel and unusual punishment; its cruelty is undeniable in both its extreme torment and its interminability, and its unusual nature is borne out by the court's inability to find even a single instance of it being imposed previously by a court in this country, not even in the days of the Founders.

Further, impracticality may preclude issuance of an order – even a divine one – casting a municipal entity such as Defendant City of Montgomery into the Lake of Fire in the manner Lietzke requests. Defendant City of Montgomery is a municipal corporation, not a person having a soul or a physical body capable of being cast into fiery lakes. *See Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 706 (2014) (acknowledging that treating corporate entities as persons for certain legal purposes is merely "a familiar legal fiction").

Finally, the Book of Life is not included in the court's law library or available through online legal research resources, and the court is unable to obtain the original or a certified copy of it at this time. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (providing that, though a court may take judicial notice of the fact of the existence the records from another tribunal, the court generally may not rely on judicial notice of those records to establish the truth of the matters asserted therein); *Bury v. Marietta Dodge*,

34

692 F.2d 1335, 1337 (11th Cir. 1982) ("The Federal Rules of Evidence require that evidence presented to the court be authenticated."); *see also* Fed. R. Evid. 902(a)(4) (providing that a copy of an official record is self-authenticating if properly "certified as correct").

If ever the Book of Life will be opened, its contents revealed, and sinners dispatched accordingly by swift, merciless judgment from God's angry hands into the Lake of Fire, it will be done on the ineffable schedule of the divine, not at the instigation of this court. Accordingly, Lietzke's § 1983 claims are alternatively due to be dismissed as frivolous and for failure to state a claim upon which relief could be granted because he requests relief that this court has no power or ability to grant. *See Carroll*, 984 F.2d at 393 (noting that a frivolous claim is one that "has little or no chance of success" – for example, when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless" (internal quotations omitted)); *Tucker*, 2017 WL 8681936, at *1 ("A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, *Neitzke*, *supra*, 490 U.S. at 327, the claim seeks to enforce a right which clearly does not exist, … or there is an affirmative defense which would defeat the claim." (*citing Neitzke*, 490 U.S. at 327 and *Clark*, 915 F.2d at 639)).

Again, the court recommends such dismissal without an opportunity to amend, as the Complaint is also due to be dismissed as frivolous and malicious and for failure to state a claim upon which relief can be granted, so even if Lietzke amended his Complaint to state a cognizable form of relief, that amendment would be futile. Additionally, given

Lietzke's past history of refiling complaints without addressing deficiencies that were previously pointed out, there is no reason to believe providing Lietzke an opportunity to refile the Complaint would be anything more than an exercise in futility. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not, however, allow an amendment … where amendment would be futile."). In addition, no opportunity to amend is due Lietzke because his Complaint is a frivolous abuse of process. *See Emrit*, 829 F. App'x at 478.

F.     Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over Lietzke's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction"). Where all federal claims are dismissed prior to trial, district courts are encouraged to dismiss any remaining state-law claims. *Raney v. Allstate Ins. Co*., 370 F.3d 1086, 1088–89 (11th Cir. 2004); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Before dismissing the remaining state-law claims, courts consider the factors of judicial economy, convenience, fairness, and comity. *Ameritox, Ltd. v. Millennium Labs*.,

36

*Inc*., 803 F.3d 518, 532 (11th Cir. 2015) (citing *City of Chicago v. Int'l Coll. of Surgeons*,

522 U.S. 156, 173 (1997)). Those factors weigh wholly in favor of dismissal here.

## IV. CONCLUSION

It is further ORDERED that, **on or before May 17, 2023,** Lietzke shall **SHOW**

**CAUSE** why he should not be sanctioned for violating Rule 11(b)(1)-(3) of the Federal

Rules of Civil Procedure by filing a meritless, frivolous case arising out of a brief encounter

with police when he has been told many times that such incidents will not sustain a § 1983

claim and that any such § 1983 claims are frivolous. **Failure to comply with this Order**

**may result in imposition of sanctions, including monetary penalties.**

*Lietzke is WARNED that failure to fully and timely comply with this Order may*

*result in denial of the motion to proceed in forma pauperis,  may result in dismissal of*

*this case with or without prejudice for failure to comply with the court's orders or for*

*failure to prosecute, and may result in other sanctions, including monetary sanctions.*

Further, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that:

1.      Lietzke's § 1983 claims be dismissed with prejudice and with no opportunity

        to amend pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) on grounds that his §

        1983 claims are frivolous and malicious and for failure to state a claim upon

        which relief can be granted.

2.      Pursuant to 28 U.S.C. § 1367(c)(3), the court decline to exercise

        supplemental jurisdiction over Lietzke's state law claims.

3.      Lietzke be declared a vexatious litigant because, despite many warnings and consequences, he repeatedly files the same cases here and elsewhere when he knows his complaints are frivolous and fail to state a claim upon which relief can be granted, and he repeatedly files claims arising out of the kind of brief police encounters he has already been told many times do not give rise to constitutional claims. *See Thomason*, 2022 WL 4371492, at *8 (declaring that the plaintiff was "an abusive and vexatious litigant" because he "wasted valuable Court resources" by "fil[ing] the same or substantially the same" claims against the same defendant despite "being repeatedly told by this Court (and probably others) that his claims … are without merit").

4.      Lietzke be ordered not to file in this District any more motions to proceed *in forma pauperis* without an accompanying notarized affidavit, sworn under penalty of perjury, in which he states whether he has ever filed any lawsuits in any court arising out of the same incident(s), acts(s), or occurrence(s) as are implicated in the complaint on which he seeks to proceed *in forma pauperis*. If he has filed any related lawsuits, he must include in his signed, notarized affidavit the name of the court(s) where each such lawsuit was filed, the case number of the related case(s), and the status of the related litigation. He must also attach to his sworn, notarized affidavit (1) a current copy of the docket sheet for each such case and (2) a copy of each and every complaint that he has filed in any such case. Any such attached copy of a

complaint shall bear the dated "filed" stamp of the Clerk of the Court in which it was filed, or it shall bear the mark of the CM/ECF (PACER) system showing that it is a copy of the complaint that is in the official court record. Failure to follow these instructions shall result in denial of the motion to proceed *in forma pauperis* and may result in dismissal of the case with or without prejudice for failure to comply with the court's orders. *See Procup*, 792 F.2d at 1072 (11th Cir. 1986) (listing approaches courts have used to address litigants who bring frequent or repetitive claims, including "requiring litigants to accompany all future pleadings with affidavits certifying that the claims being raised are novel, subject to contempt for false swearing" and "direct[ing] the litigant to attach to future complaints a list of all cases previously filed involving the same, similar, or related cause of action, and to send an extra copy of each pleading filed to the law clerk of the chief judge of the district").

It is further ORDERED that on or before **May 17, 2023**, Plaintiff may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which Plaintiff objects. Frivolous, conclusory, or general objections will not be considered by the District Court. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the proposed findings and legal conclusions in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; see *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 3rd day of May, 2023.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE